404 So.2d 935 (1981)
CAPITOL CITY LEASING CORPORATION
v.
Sidney D. HILL d/b/a Hill Logging Contractor, et al.
Nos. 81-C-0538, 81-C-0585.
Supreme Court of Louisiana.
September 28, 1981.
*937 Michael W. Lee of Burgess & Lee, Livingston, for defendant-applicant in 81-C-0538, and defendant-respondent in 81-C-0585.
Andrew Jack Bennett, Jr. of Bennett & McLaughlin, Baton Rouge, for plaintiff-respondent in 81-C-0538, and defendant-respondent in 81-C-0585.
Michael R. Connelly of Rogers & Connelly, Baton Rouge, for plaintiff-applicant in 81-C-0585, and plaintiff-respondent in 81-C-0538.
BLANCHE, Justice.
We granted writs, 399 So.2d 597 and 399 So.2d 603, to review the decision of the court of appeal, 394 So.2d 1264. We fully agree with and adopt that court's factual findings relative to the issues on appeal as follows:
On December 7, 1976, Sidney Hill leased two used Bombardier log skidders from Capitol City Leasing Corporation for a 24-month term with a rental of $836.80 per month for each skidder. Hill had previously obtained the skidders from Minton Equipment Company, Inc. for a trial period. Unable to obtain the proper financing to purchase the equipment himself, Hill contacted Capitol City in an attempt to arrange financing. V. W. Williamson, Capitol City's vice president, agreed to purchase the two skidders from Minton Equipment. Hill, in turn, agreed to lease the skidders from Capitol City for the above quoted rent. Capitol City paid Minton $16,905.00 for each skidder. There was no option to purchase under the lease.
Each lease agreement contains a waiver of warranty on the back page which reads as follows:
"WARRANTIES. Lessor will request the supplier to authorize Lessee to enforce in its own name all warranties, agreements or representations, if any, which may be made by the supplier to the Lessee or Lessor, but Lessor itself makes no express or implied warranties as to any matter whatsoever, including, without limitation, the condition of equipment, its merchantability or its fitness for any particular purpose. No defect or unfitness of the equipment shall relieve Lessee of the obligation to pay rent or of any other obligation under this lease."
On the front page of each lease agreement, printed in block letters, is the phrase: "THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE OF THIS PAGE ARE A PART OF THIS LEASE."
During the negotiation for the lease of the skidders the lessor made clear to the lessee, and all parties so testified, that the lessor would not warrant the used skidders in any manner. However, the lessor verbally told the lessee that all warranty rights would flow from the seller of the equipment to the lessee. The testimony at trial indicates that there was an express warranty running from the seller to the lessee for a thirty-day period following confection of the leases. There was no waiver of the seller's implied warranty of fitness. La. C.C. art. 2476.
Almost from the time he began using the skidders, Hill experienced numerous problems with them. Although both skidders had been rebuilt by Minton prior to their sale to Capitol and lease to Hill, the machines experienced steering problems, wench problems, problems with the chain coming off of the wench pulley, problems with the universal joint in the drive shaft breaking, and numerous other problems rendering the skidders unfit for the logging business. Minton Equipment made a number of repairs to the machines during the 30-day express warranty period and continued to make repairs thereafter amounting to the sum of $2,250.69, which Minton is presently seeking against Hill.
Around March or April of 1977, Hill asked Capitol City if it would take the *938 equipment back, but Capitol City refused. Williamson, vice president of Capitol City, testified that he had bought the equipment strictly for Hill's use and that he had no use for two used log skidders. Williamson said he agreed, however, for Hill to take the equipment back to Minton with the understanding that the rental payments would remain due and owing under the lease contract. Having become frustrated with the constant breakdown of the machines, Hill had Minton Equipment take the machines to its yard in Alexandria, Louisiana in the late spring of 1977, with the understanding that Minton would attempt to sell the skidders.
Capitol City filed suit to accelerate the rentals under the lease in June, 1977. Some 15 months later, while the suit was pending, Capitol City obtained the two skidders from Minton and sold them at a public auction on August 20, 1978. It received $8,000 for each skidder for a total of $16,000. Hill was not notified of the sale of the skidders until after the sale.
In addition to the clause of the contract assigning all warranties of the equipment to Hill, an additional clause must also be considered in granting relief. That clause reads as follows:
"DEFAULT  Upon any default, Lessor shall have the right, at its option, but shall not be obligated, to do any one or more of the following: ... (4) Lessor may sell at private sale any and all of the equipment for cash or on credit and then file an ordinary proceeding to recover from Lessee all of the costs of taking possession, storing, repairing, and selling of the equipment plus an amount representing liquidated damages in the sum of the rental payments thereafter accruing under the terms of the lease until the termination of the lease, had the Lessee not defaulted on the lease obligation, less the net proceeds of such sale."
The trial court rendered judgment in favor of the lessee, Sidney D. Hill d/b/a S. D. Hill Logging Contractor (Hill), and against the lessor, Capitol City Leasing Corporation (Capitol), cancelling both lease agreements and restoring to Hill a sum which represented the rentals paid on the two log skidders. Hill was also awarded attorney's fees. Judgment was rendered in favor of Capitol and against the seller of the skidders, Minton. That judgment rescinded the sale of the skidders and ordered the return of the purchase price. Minton was ordered to reimburse the lessor for all the sums the lessor paid to Hill plus a sum representing costs of sale and repair and attorney's fees. Minton was given a credit in the amount for which the skidders had sold at public auction. The demands of the lessor, Capitol, and the seller, Minton, against the lessee were dismissed, as were the demands of the lessee against the seller.
The court of appeal reversed in part and amended in part the decision of the trial court. The appellate court granted judgment in favor of Capitol City Leasing Corporation against Sidney Hill and Robbie C. Hill, the lessee's guarantor, in the amount of $35,145.60, which represented the rentals due and owing under the lease, together with legal interest from date of judicial demand. That award was subject to a credit of $16,000, the amount received for the skidders at the auction. There was also judgment in favor of Capitol against Sidney Hill and Robbie Hill for $5,110.18, which represented the cost of sale and preparation for sale, together with legal interest from date of judicial demand, plus the sum of $3,829.12 for attorney's fees, which represented 20 percent of the accrued rentals due and owing by the lessee. The court then ordered judgment in favor of Sidney Hill and Robbie Hill against Minton Equipment Company for all amounts the Hills had been cast to pay unto Capitol, plus $3,000 in attorney's fees and costs.
We agree with the appellate court's finding that Capitol validly assigned all its warranty rights against the seller to Hill. An assignment of warranty rights is not prohibited by the Civil Code. Civil Code art. 2541 provides that a buyer may bring an action for a reduction in price. However, this must be read in light of C.C. art. 11, which allows individuals freedom to *939 contract as they choose so long as their contracts do not derogate from laws made for public order or good morals, or affect the rights of others, or go contrary to the public good. The assignment of rights in this case neither derogates from public order nor good morals, nor does it affect the rights of others. By assigning its rights to Hill, Capitol did not change the rights and obligations of Minton; it only changed the party entitled to enforce them.

Minton's Liability to Hill
The court of appeal correctly determined that Minton should be considered a manufacturer after it rebuilt the machines with all new parts. See Spillers v. Montgomery Ward and Co., Inc., 294 So.2d 803 (La.1974). However, we disagree that redhibition was the proper basis upon which to grant relief. Redhibition is the avoidance of a sale because of some vice or defect in the thing sold. It requires the seller to return the purchase price and the buyer to return the thing purchased. After Capitol sold the two skidders at public auction on August 20, 1978, it could no longer return the skidders to the seller; thus, a redhibition action was no longer available. However, a reduction in price can be granted in this circumstance. To determine the correct amount in which the price should be reduced, one must look to the price which a reasonable buyer would have paid for the thing as warranted by the seller, and to the price a reasonable buyer with knowledge of the defects would have paid. In the case at bar, the original sale price for each skidder when Minton sold to Capitol was $16,905. When Capitol re-sold the skidders at auction, the buyer, who knew of the defects, paid Capitol $8,000 for each skidder. In this case, the Court will accept these sums as reflecting the amounts a reasonable buyer would pay both before and after knowledge of the defects. Although a credit for the purchaser's use of a thing may be awarded in some instances, no such credit is warranted here. Mr. Hill's attempts to use the machines were interrupted frequently by serious and ongoing problems caused by defects in the machines. In Alexander v. Burroughs Corp., 359 So.2d 607 (La.1978), the Court, through Justice Dixon, stated, "A credit for a purchaser's use of a product may be proper in certain instances, even in favor of a bad faith seller..... Compensation for the buyer's use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller's attempts to repair." Such is the case here and, accordingly, no credit will be awarded for the purchaser's use. Minton will be ordered to reimburse Hill the sum of $8,905 for each skidder representing the reduced value of the skidders.
Since a manufacturer is considered a bad faith seller, Hill is entitled to additional relief from Minton. Civil Code art. 2544 provides that an action for a reduction in price is subject to the same rules and limitations as a redhibition action; therefore, C.C. art. 2545, which provides that a bad faith seller is liable for the price, repayment of expenses (including attorney's fees), and damages, should be considered in this case.
Minton will be liable for Hill's attorney's fees in all proceedings. However, we disagree with the court of appeal's finding that Minton should be required to reimburse Hill for Capitol's attorney's fees. In an action for redhibition or quanti minoris, a bad faith seller or manufacturer is liable for the purchaser's attorney's fees. In this case the purchaser, Capitol, assigned all its redhibition rights to Hill. Therefore, Minton should be liable for Hill's attorney's fees since Hill now stands in the purchaser's shoes for all redhibition purposes. Minton should not, however, also be required to reimburse Hill for Capitol's attorney's fees. Hill's liability for Capitol's attorney's fees arose out of the lease contract between Hill and Capitol. Minton was not a party to this contract and any provisions in it cannot affect his liability under the redhibition articles. To hold that Minton must reimburse Hill for the attorney's fees Hill owes unto Capitol would, in effect, force Minton to *940 pay the attorney's fees of both the original purchaser and that purchaser's assignee. The assignment of all warranty rights was valid and, from that point forward, Minton was liable only unto Hill in any warranty action. To hold Minton responsible for both Capitol's and Hill's attorney's fees would double the seller's liability for attorney's fees as a result of an assignment which is prohibited under C.C. art. 11. This article, which does not allow two contracting parties to affect the rights of a third person, reads as follows:
"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."
Hill will also be allowed to recover from Minton compensation for the actual damages he suffered because of the defects in the skidders. Although the lease contract between Hill and Capitol provided for liquidated damages between those two parties for breach of the lease, this provision is not conclusive as to the actual damages suffered by Hill because of equipment failure. We disagree with that portion of the court of appeal's order basing Hill's damages on this contractual amount. Minton will be cast for the sum of actual damages to be proven by Hill. That amount will be determined by the trial court on remand.

Hill's Liability to Capitol City Leasing
Hill's liability to Capitol has been determined, to a great extent, by the provisions of the lease contract between them. This contract is set forth in pertinent part in the statement of facts. Hill will be cast to pay the liquidated damages due under the lease. The liquidated damages are computed as the amount of the accelerated rental payments minus the net proceeds from the sale of the skidders at auction. In addition, Hill will pay Capitol's attorney's fees in the amount specified in the lease as 20% of the liquidated damages.
Additionally, Hill will be required to reimburse Capitol for the costs of taking possession, storing, repairing and selling the equipment. He will not, however, have to pay Capitol for the costs of repairing the equipment since Capitol will not be required to pay Minton for the repairs for the following reasons. Capitol had Minton repair the equipment so that it could re-sell the equipment at auction for the highest possible price. At auction, Capitol received $8,000 for each skidder. This Court accepted the $8,000 figure to represent the amount which a reasonable buyer, who knew of the defects, would pay for a skidder. We then used this amount to determine the reduced value of each skidder in granting relief in quanti minoris. Since the skidders brought $8,000 each at auction, Minton only had to reimburse Hill $8,905 for each skidder. Had Minton not repaired the skidders prior to the sale, they would have brought less at auction. Therefore, Minton would have been required to pay more to Hill to compensate for the difference in the value of the skidders as warranted by Minton and the value of the skidders with the defects. For example, in this case, each skidder cost $16,905. Capitol re-sold each skidder for $8,000, which meant Minton only had to reimburse Hill for $8,905 for each. However, if Capitol had sold the skidders at auction without having Minton repair them prior to sale, and they had brought only $4,000 each, Minton would have had to pay Hill $12,905 for each. Minton has been compensated for the value of the repair work done on the skidders because Minton will have to pay less money to Hill in the action for a reduction in price. Since they have already been compensated for the value of their repair work once in having to pay less to Hill, Minton cannot collect again for the cost of the repairs by charging them to Capitol. To allow Minton the benefit of paying a lower amount to Hill and then to receive payment for the repairs from Capitol would allow them to recover twice. The failure of the skidders *941 to work because of the defects attributable to Minton's work was a major factor in the present litigation. It is enough that Minton will be compensated for repairing the skidders for resale by paying less to Hill. He will not be allowed to make a profit on it by also charging Capitol for the repairs. Since Capitol will not be required to pay Minton for the repairs, Hill owes Capitol no money to cover the cost of repairs.
This case is remanded to the trial court to determine the amount of actual damages Hill suffered as a result of the defective equipment and, thereafter, that court shall render a judgment granting relief according to the views expressed herein.
LEMMON, J., dissents.