liTHIBODEAUX, Judge.
Defendants, Courvelle Toyota Sales & Service, Inc. and Toyota Motor Sales, USA, Inc., appeal a judgment in favor of plaintiff, James Fruge. The trial judge found defendants jointly liable and awarded a sum of $9,677.82 in quanti minoris under the rules of redhibition. La.Civ.Code art. 2520 et seq. That award 12included the amount Mr. Fruge paid as a down payment on the purchase of his car as well as the amount of an unpaid deficiency judgment issued against Mr. Fruge. Furthermore, the trial judge awarded Mr. Fruge $5,000.00 in attorney’s fees. Determining Courvelle to be a good faith seller, the trial judge awarded it $2,422.75 in attorney’s fees against Toyota USA, but denied Courvelle’s cross claim for indemnification against Toyota. Both Courvelle and Toyota USA appeal the judgment each citing several issues for this court’s review.
We amend the judgment and award to Courvelle Toyota its claim of indemnification against Toyota USA for all sums for which Courvelle Toyota was cast in judgment to the plaintiff, James Fruge. The judgment is affirmed in all other respects.
I.

ISSUES

The issues presented for review in this appeal are the following:
(1) whether the trial court erred in finding a redhibitory defect;
(2) whether the trial judge improperly included an -unpaid deficiency judgment against the plaintiff as part of the damage award;
(8) whether the trial court improperly disallowed a credit for use of the automobile;
(4) whether Courvelle Toyota as a good faith seller is liable for any part of the damage award; and,
(5) whether Courvelle Toyota is entitled to judgment against Toyota USA on its indemnity claim for any sums awarded against it to the plaintiff.
|3II.

FACTS

On March 30,1992, James Fruge bought a new 1992 Toyota Tercel from Courvelle Toyota Sales & Service, agent and dealer for Toyota Motor Sales, USA, the manufacturer. Over the course of the two and a half years following the sale, the car proved to be the proverbial lemon fraught with serious defects. Mr. Fruge’s problems began unfolding in June of 1992 and continued up to December of 1994.
On June 4, 1992, Mr. Fruge brought his car into Courvelle with complaints of a malfunctioning speaker and an odor emanating from the air conditioner. Courvelle replaced the right door speaker, but did not document whether anything was done to address the air conditioning complaint. Several months later, on January 12, 1993, Mr. Fruge brought the car in to Courvelle at which time the right weather strip was replaced. Once again on June 22, 1993 Mr. Fruge had a problem with the stereo speakers; this time, it was the left speaker. Courvelle made the necessary corrections at that time. On September 29, 1993 it was again necessary for Mr. Fruge to bring his car in to Courvelle. His complaints involved the right door lock assembly and excessive gas consumption. Courvelle changed the right door lock assembly, but failed to document whether they addressed the complaint of gas consumption. Toyota paid for all repairs. Although these problems caused Mr. Fruge a great deal of inconvenience and grief, they were merely a harbinger of more serious defects yet to occur.
On December 11, 1993, the transmission had to be replaced in response to the observations of Courvelle’s technician who indicated that the transmission was not pulling properly, that shifting was difficult, that the clutches and oil were burned, and that metal shavings were in the oil pan. Because the car was still under warranty [¿registering 32,985 miles, and as Courvelle Service Manager, Emily Courvelle testified, there were no signs of abuse or neglect on the part of Mr. Fruge, Toyota covered the costs.
*470 On April 11,1994, Mr. Fruge found himself once again at the Courvelle dealership. This time, his complaints regarded the door lock assembly and the passenger door speaker. Courvelle changed the door lock assembly and ordered new speakers. The new speakers were installed on April 19, 1994. As the car was still under warranty, Toyota covered the costs for these repairs.
A few months later on July 29, 1994, Mr. Fruge experienced yet another problem with his car. En route to Texas, Mr. Fruge had to stop his car near Lake Charles when he heard “frying” noises under the hood. After towing his car back to Opelousas, an approximate 80 mile distance, and putting oil in it at his home, Mr. Fruge drove his car the three blocks to the Courvelle dealership. At that time, Courvelle replaced the rear main seal which, according to Ms. Courvelle’s testimony, prevents oil from leaking into the engine. Ms. Courvelle further testified that this problem was not the result of improper owner maintenance nor was there any evidence of owner neglect. Accordingly, Toyota paid for the repairs. It is important to note, as did the trial court, that there was no evidence presented at the trial as to whether Cour-velle checked the engine when it changed the rear main seal to determine if there was any damage to the motor as a result of the leak.
On August 9, 1994, Mr. Fruge brought his car to Courvelle because the transmission was slipping. For the second time, Courvelle replaced the transmission. Ms. Courvelle said it is unusual for a new car to have had three different transmissions. Upon Cour-velle’s recommendation, Toyota paid for the replacement. |sMs. Courvelle testified again that had there been owner neglect, Courvelle would not have recommended that Toyota cover the costs.
One week later on August 16, 1994, Mr. Fruge brought his car to Courvelle to cheek the exhaust. In response, Courvelle replaced the oxygen sensor, a federal emissions part. At this point, the mileage on the car was 40,409. Toyota covered the cost of this repair. Ms. Courvelle again stated that there was no evidence up to that point of owner neglect or abuse.
Mr. Fruge next brought his car to Cour-velle on November 30,1994 at which time the mileage on the car was 43,648. He reported that the engine oil light sensor started blinking on and off and eventually stayed on. Ms. Courvelle informed Mr. Fruge that the engine oil was very black and the engine needed maintenance. She further testified that Courvelle charged customers for general maintenance after twelve months or 12,500 miles. Mr. Fruge indicated to Ms. Courvelle that he had regularly maintained his car and changed the oil up to that point and would continue to do so. Mr. Fruge testified that he purchased oil from Courvelle. At that time, Courvelle also found that a gasket or a seal around the water pump was leaking. Courvelle, however, did not make any repair or replacement for, as Ms. Courvelle testified, the mileage on Mr. Fruge’s ear exceeded the factory warranty.
On December 2, 1994, Mr. Fruge brought his car to Toyota for the last time again complaining of the illuminated engine oil sensor. Ms. Courvelle contacted Steven Stro-der, District Service Manager of Gulf States Toyota who, in turn, requested that Cour-velle examine the valve cover for sludge. Courvelle removed the valve cover and waited for Mr. Stroder to make his examination of the car. In the meantime, Mr. Fruge wanted his car put back together insisting that the warranty still applied. Courvelle, however, refused to reassemble the car.
LMr. Stroder examined the car on December 13, 1994. He testified that there was sludge build-up in the engine opining that lack of maintenance was the culprit in this situation although coolant in the engine is a potential cause. In his testimony, Mr. Stro-der went on to define lack of maintenance as not changing the oil on a regular basis. Notably, Mr. Stroder is not an expert in auto mechanics and was therefore not testifying as an expert when testifying to his conclusion regarding the cause of the sludge build-up in the engine. According to his testimony, it is his duty to determine whether repairs will be covered by Toyota or by the car owner. In this case, he determined that Toyota would not cover the costs. Because the warranty did not apply and Mr. Fruge refused to pay *471 for the repairs, Courvelle decided to leave the car disassembled on its lot.
There was some dispute as to what type of warranty Mr. Fruge purchased. Mr. Fruge testified that he paid $500.00 cash for an extended warranty which covered all services excluding general maintenance for parts that, as a rule, deteriorate with time and normal wear and tear. Mr. Fruge also paid a $1,000.00 cash down payment. Courvelle does not dispute the fact that Mr. Fruge paid $1,500.00 cash when he purchased his car although their records indicate otherwise. It contends that their Finance and Insurance Manager, Brett Peloquin, subsequently charged criminally with embezzlement of funds from Courvelle, pocketed Mr. Fruge’s money, destroyed the original bill of sale of which Mr. Fruge has a copy, and drafted a new one indicating a different down payment for the Courvelle records.
After a trial on the merits, the trial judge ruled in favor of Mr. Fruge and assessed a judgment award against Courvelle and Toyota USA in the sum of $9,677.82 plus legal interest. Furthermore, the trial judge assigned $5,000.00 in attorney’s fees against both defendants. Regarding Courvelle individually, the trial kludge found it to be a good faith seller awarding it attorney’s fees against Toyota USA in the sum of $2,422.75. Neither defendant was granted a credit for use.
Courvelle, through counsel, filed a Motion for a New Trial requesting an amendment of the judgment to reflect its indemnification claim against Toyota USA for all sums which Courvelle is liable in addition to its award for attorney’s fees. On April 25, 1996, the trial judge denied the motion.
III.

LAW AND ARGUMENT

Both Courvelle and Toyota USA contend that the trial judge erred in determining Mr. Fruge was entitled to an award in quanti minoris and in basing the award in part upon an unpaid deficiency judgment against him. They further argue that the trial judge erroneously concluded that there was no evidence establishing that Mr. Fruge failed to maintain his vehicle. It is also their joint contention that the trial judge committed manifest error in not allowing either of them a credit for Mr. Fruge’s use of the car.
Separately, Courvelle asserts that the trial court judgment is incomplete in one aspect and incorrect in another. First, it contends that in addition to the award in its favor against Toyota USA for its attorney’s fees in this matter, it is also entitled to a judgment against Toyota USA for any loss it sustained because of the redhibitory defects pursuant to La.Civ.Code art. 2531. Second, Courvelle contends that as a good faith seller, the trial judge erred in assessing all damage costs and attorney’s fees against both Courvelle and Toyota USA,
Toyota USA argues that the trial judge was incorrect in finding Courvelle to be a good faith seller and in awarding it attorney’s fees against Toyota USA. To bolster its argument, it refers to the trial judge’s prior denial of Courvelle’s | gMotion for a New Trial on the issue of its indemnification from Toyota USA for any judgment amount against it. Toyota USA contends that the denial of the motion is an indication that the trial judge deemed Courvelle jointly liable for the defective car. As such, it contends that the trial judge’s finding that Courvelle is a good faith seller is a contradiction of its prior determination and is clearly wrong. It is also the contention of Toyota USA that the trial judge committed reversible error in finding it liable for the criminal act of Courvelle’s employee.
We will review this case abiding by the well accepted manifest error-clearly wrong standard of review. Regarding this standard of review, the supreme court in Stobart v. State, through DOTD, 617 So.2d 880, 882 (La.1993), referred to the following two-pronged test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that *472 the finding is clearly wrong (manifestly erroneous), (citation omitted).
Accordingly, unless the trial judge in this case incorrectly applied the law or made an unreasonable factual finding unsupported by the record, this court shall affirm the judgment.
The Louisiana Civil Code sets forth a series of articles which govern all actions in redhibition, regardless of the remedy sought. The trial judge correctly concluded in his reasons for judgment that the correct remedy in this case is quanti minoris since Mr. Fruge’s car was seized and sold at a sheriffs sale for payment default. Our colleagues of the first circuit explained in MTU of North America v. Raven Marine, 603 So.2d 803 (La.App. 1 Cir.1992), writ denied, 612 So.2d 55 (1993), that when the buyer no longer possesses the defective product, the sale cannot be rescinded, thus relegating the buyer to a reduction of the purchase price.
Louisiana Civil Code Article 2530 states in pertinent part that under redhibition the buyer must prove that the defect or defects complained of existed prior to his or her purchase of the defective product. Moreover, that article states that there is a presumption that the defect is presumed to have existed at time of delivery if it appears within three days. Our supreme court in Rey v. Cuccia, 298 So.2d 840, 843 (La.1974), expanded the three day inference stating that if the defect appears “soon after the thing is put into use, a reasonable inference may arise, in the absence of other explanation or intervening cause shown, that the defect existed at the time of the sale.” (citations omitted.)
From June 1992 to December 1994, Mr. Fruge dealt with a steady flow of problems with the new 1992 Toyota Tercel he purchased on March 30, 1992. The record indicates that Mr. Fruge brought the car to Courvelle Toyota, the dealership from which he purchased the car, for repairs on twelve documented occasions. Mr. Fruge testified, however, that he brought the car in on several other occasions for service and or repairs, but no documentation was made indicating exactly what action was taken.
In this case, the initial defect surfaced just over two months after Mr. Fruge purchased his car. There is nothing in the record indicating that Mr. Fruge abused or neglected the car. In fact, Courvelle testified that until the warranty expired, it was compelled to pay for all repairs listed in the warranty as there were no signs of owner abuse, neglect, or improper maintenance. Absent any unusual treatment of the car in this ease, it can only be inferred that the defects experienced by Mr. Fruge were red-hibitory. Our review of Mr. Fruge’s car repair saga as set forth | i0in the record indicates that the trial judge was correct in concluding that the car Mr. Fruge purchased was defective in numerous aspects.
Having determined the defects to be redhi-bitory and that Mr. Fruge is entitled to recover in quanti minoris, we next address the question of whether the trial judge was correct in primarily basing the judgment on the unpaid deficiency judgment. The trial judge awarded Mr. Fruge $8,177.82 plus interest and costs, which is the amount of the deficiency judgment issued against him in the executory process suit filed by his creditor, First Acadiana National Bank. Additionally, the trial judge awarded Mr. Fruge $1,500.00, the amount of his cash down payment which includes the $500.00 paid for an extended warranty. La.Civ.Code art 2324.1 states, “In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.”
Courvelle and Toyota claim that there is no legal and factual basis for the trial judge’s awarding Mr. Fruge the amount of the deficiency judgment issued against him because it is solely the right of First Acadia-na, as creditor, to proceed on the judgment. We find no merit to this argument. There is no jurisprudential bar on a trial judge’s right to award damages based on an outstanding judgment against the plaintiff in an action.
Courvelle was found to be a good faith seller; Toyota, as manufacturer, is presumed to be a bad faith seller. La.Civ.Code art. 2545. Regardless of the category, sellers of defective products owe the purchaser of a defective product “reasonable expenses *473 occasioned by the sale.” La.Civ.Code arts. 2531 and 2545. Mr. Fruge testified that his monthly ear payments were $269.00 in addition to insurance payments. He was earning $7.00/hour working a 40 hour work week. When Courvelle refused to reassemble his car, Mr. Fruge was forced to pay for other forms | nof transportation to and from work. Eventually, Mr. Fruge could no longer afford to continue paying for an immobilized car while accruing expenses for alternative means of transportation. The end result was his defaulting on his loan and the subsequent issuance of a deficiency judgment against him. The deficiency judgment was directly linked to the Mr. Fruge’s purchase of the defective car and therefore falls within the ambit of La.Civ.Code art. 2545 as a reasonable expense pursuant to that sale. As such, the trial judge was correct in factoring the amount of the deficiency judgment into the total damages awarded to Mr. Fruge.
Toyota USA finds fault with the trial judge’s decision to jointly assign it $1,500.00 in damages, the amount of Mr. Fruge’s down payment on the car he purchased from Toyota. It argues that Mr. Fruge in paying this amount was duped by an embezzling employee of Courvelle, not an employee of Toyota, and therefore Toyota should not be liable. This argument is without merit for regardless of who pocketed the money, the fact remains that Mr. Fruge paid $1,500.00 and is entitled to receive that amount in damages according to both La.Civ.Code arts. 2531 and 2545.
Courvelle and Toyota argue that there was evidence establishing that Mr. Fruge failed to maintain his car rendering the trial judge’s finding on this issue clearly erroneous. The record overwhelmingly supports the contrary position, i.e. that Mr. Fruge at all times maintained and eared for his car. In her testimony, Ms. Courvelle repeatedly and emphatically stated that there were no signs of neglect or abuse. Essentially, Courvelle and Toyota base their argument solely on Mr. Stroder’s testimony. Regarding this testimony, the trial judge stated in his reasons for judgment, that Mr. Stroder “is not an expert in auto mechanics and was not tendered as an expert to determine that the sludge build up that he found in the engine was due |i2to plaintiff not changing the oil regularly in the vehicle.” Accordingly, the trial judge found that the sludge build-up which Mr. Stroder contends was caused by owner neglect could reasonably have been caused by the oil leaking out of the main seal. The trial judge further noted that no mechanic examined the engine to determine if the oil leak had damaged the engine. We find the trial judge’s conclusion very reasonable and substantially supported by the facts in this case. As such, we defer to the trial judge’s finding bearing in mind the routinely cited jurisprudential tenet: “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
Under Louisiana law, both the good faith and bad faith seller are entitled to a credit for the buyer’s use if the buyer reaped a benefit from that use. La.Civ.Code art. 2531,2545. Courvelle and Toyota assert that the trial judge committed manifest error when he denied them a credit for Mr. Fruge’s use of the vehicle which registered at over 43,000 miles. Regarding credit for use, our supreme court stated in Capitol City Leasing Corp. v. Hill, 404 So.2d 935, 939 (La.1981),
Compensation for the buyer’s use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller’s attempts to repair.
The trial judge in this ease stated in his reasons for judgment that “the vehicle was in and out of the repair shop at least twelve (12) times over a 2íé year period and that plaintiff suffered a grave inconvenience as a result of the vehicle problems.” The record strongly supports the trial judge’s application of jurisprudence and conclusion for Mr. Fruge’s trials and tribulations with his new car are well documented.
*474 Having been deemed a good faith seller by the trial judge, Courvelle argues that the trial judge erred in assessing all damage costs and attorney’s fees against Courvelle and Toyota USA jointly. In its support it asserts that the good faith seller is “bound only to restore the purchase price and corresponding expenses of the sale.” Riche v. Krestview Mobile Homes, Inc., 375 So.2d 133, 137 (La.App. 3 Cir.1979). Considering our determination that the deficiency judgment against Mr. Fruge was essentially an expense of the sale, the trial judge correctly assigned the $8,177.82 judgment award to both Courvelle and Toyota.
Courvelle also asserts that it is entitled to recover the losses it sustained from Toyota USA in addition to its attorney’s fees award citing La.Civ.Code art. 2531. That article provides Courvelle with an action to recover from Toyota USA its losses due to the sale of the defective ear. Citing Riche, 375 So.2d 133, Courvelle states that the action provided in La.Civ.Code art. 2531 entitles it to full indemnity of the redhibition action filed against it from the manufacturer. Toyota USA argues that the trial judge’s denial of Courvelle’s Motion for a New Trial disposed of the issue of Courvelle’s entitlement to any indemnification and renders Courvelle’s award of attorney’s fees and the finding that it is a good faith seller clearly wrong.
We do not find a discrepancy between the trial judge’s denial of the Motion for a New Trial and his finding that Courvelle is a good faith seller. We do, however, follow this court’s finding in Riche, 375 So.2d 133, that a good faith seller of a defective product is entitled to indemnification from the manufacturer for the redhibitory claim asserted against it by the purchaser pursuant to La. Civ.Code art. 2531. As such, we amend the trial court’s judgment to grant Courvelle Toyota recovery against Toyota Motor Sales, USA, Inc. for all sums for which it was cast in judgment to James Fruge.
JmIV.

CONCLUSION

For the foregoing reasons, the trial court’s judgment is amended and, as amended, affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.