hPICKETT, Judge.

FACTS

Dr. Robert Chastant, an orthodontist, attended an orthodontic conference in 1994. He was in the market for an imaging system for his orthodontic practice. This system would be used to make digital images of his patients. Those images would be used to assist in prescribing the correct treatment and communicating with the referring dentists regarding the treatment.
Dr. Chastant had already put a deposit down with Dolphin Imaging when he met Tom Gwaltney, the president of Oasys Imaging, Inc. He discussed his computer needs with Gwaltney and eventually decided to purchase an imaging system from Oasys instead of Dolphin.
One of Chastant’s concerns was that his system be able to interface with the Or-thotrac Management Software (OMS) already in use at his office. He wanted to be able to enter information into one system that could be read by both. Gwaltney knew that Chastant wanted this and agreed he could do it. The main problem was that OMS was a UNIX-based system and Oasys was Windows-based. Oasys agreed to design software to make the interface possible.
On April 25, 1994, Dr. Chastant entered into a contract with Rockfort Industries, *1126 Inc., to provide the software and the hardware with the specifications to run the software. Oasys sold the hardware and software to Rockfort, who leased the hardware to Chastant. Included in the agreements were service contracts with Rock-fort for the hardware and with Oasys for the software.
Dr. Chastant claims the problems with the Oasys system began almost immediately. The computers would lock up when attempting to get the OMS and Oasys to interact. Error messages frequently appeared during routine functions. | gThey were unable to retrieve information stored on back-up systems. Images were not of high quality, and they could not print the images. The voice recognition system which would have allowed one technician to take pictures would not work, so two technicians were required to do the job. In initial consultations, instead of being able to use the computer terminal in the room set aside for that purpose, the technician would often have to take the images and then leave the room to enter data into another terminal. When images were sent to referring dentists, the wrong name would be on the image, misidentifying the patient. Chastant’s office manager, Liz-ette Breaux, testified that it was often difficult to get someone from Oasys on the phone to help correct the problems.
Although Oasys did attempt to help solve the problem, Chastant claims they were never able to get the OMS and Oasys systems to interface. In 1997, Chastant abandoned use of the Oasys system.
On November 6, 1996, Oasys sent Chas-tant a demand letter for payment for certain computer equipment and unpaid maintenance contracts. Chastant, in turn, canceled their contract with Oasys alleging defects in the computer system. On April 4, 1997, Chastant filed suit in redhibition against Oasys, seeking the return of the purchase price of the system, interest, expenses, damages, and attorney fees.
This matter went to trial on April 5, 1999, and was continued on October 9, 1999. The trial court issued Reasons for Judgment on March 30, 2001, and First Amended and Supplemental Reasons for Judgment on May 30, 2001. A Motion to Fix Attorney’s Fees was heard on September 7, 2001, and written reasons for judgment on that motion were issued on October 10, 2001. A formal judgment was signed on November 30, 2001, awarding Chastant damages in the amount of | s$88,636.00 plus legal interest from the date of judicial demand, attorney fees in the amount of $12,469.50 plus legal interest from the date of judicial demand, and casting Oasys with all costs. It is from this judgment Oasys appeals.

ASSIGNMENT OF ERROR

Oasys alleges four assignments of error, as follows:
1) The trial court erred when it found that Chastant was entitled to recission of the contract of sale for equipment with Oasys.
2) The trial court erred by finding that the Oasys imaging system was defective because it could not interface with Or-thotrac.
3) Alternatively, the trial court erred by failing to Award a reduction in the purchase price rather than recission of the sale.
4) The trial court erred by awarding attorney fees.

DISCUSSION

Redhibition is defined in La.Civ.Code art. 2520:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
*1127 A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain recission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
An action in redhibition only lies if the defect existed at the time of delivery. La.Civ.Code art. 2530. In this case, the trial court relied on La.Civ.Code art. 2545 in assessing damages, which governs the liability of a seller who knows of a redhibi-tory defect. It states:
A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he |4knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees. If the use made of the thing, or the fruits it might have yielded, were of some value to the buyer, such a seller may be allowed credit for such use of fruits.
A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing.
Since Oasys developed the software in this case, they are considered to be the manufacturer and are thus presumed to know of any defect.
This court discussed the meaning of “defect” in a redhibitory action in Harper v. Coleman Chrysler-Plymouth-Dodge, Inc., 510 So.2d 1366, 1369 (La.App. 3 Cir.1987):
The term “defect”, as contemplated by Article 2520, means a physical imperfection or deformity; or a lacking of necessary components or level of quality. Ezell v. General Motors Corporation, 446 So.2d 954 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1350 (La.1984); Williams v. Louisiana Machinery Company, Inc., 387 So.2d 8 (La.App. 3rd Cir.1980). The defectiveness of the thing sold is a factual determination by the trier of fact, whose factual conclusions will not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Louisiana Supreme Court discussed the burden of proof in a redhibition action in Rey v. Cuccia, 298 So.2d 840, 843 (La.1974):
The buyer may prove the existence of redhibitory defects at the time of the sale not only by direct evidence of eyewitnesses, but also by circumstantial evidence giving rise to the reasonable inference that the defect existed at the time of the sale. [Citations omitted.] As stated in Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151, 155: * * * proof by direct or circumstantial evidence is sufficient to constitute a preponderance when, taking the evidence as a whole, such proof shows the fact or causation sought to be proved is more probable than not.’
The appellant’s first assignment of error relates to the trial court’s finding that Chastant was entitled to recission of the sale for equipment purchased from the | ¡¡appellant. The appellant argues that a lightning strike in 1994, a month after the system was installed, was the cause of Chastant’s problems, not a defect in the system. The appellant further argues Oa-sys was not allowed an opportunity to rem *1128 edy any defects, and, since Chastant was still using some of the equipment for word processing or emulation, Chastant should, at most, be allowed only a reduction in purchase price.
The trial court heard evidence regarding the lightning strike and did not find it to be the cause of the problems in the system. This is a finding of fact by the trial court that is supported by the record and, therefore, not manifestly erroneous. Oa-sys, in fact, was afforded an opportunity to remedy the problems. Breaux and Chas-tant both testified they called Oasys repeatedly about the problems with the system. In addition, Gwaltney or a member of Oasys staff went to New Iberia to investigate these problems on four separate occasions. We find no error on the part of the trial court in determining Oasys was given the opportunity to remedy the problems. Finally, the trial court chose not to give Oasys a credit for the equipment still being used by Chastant. Considering the costs of the system and the intended use, the function for which it is being used is a very minor function. As there is no evidence as to the value this equipment possesses for the manner in which it is being used, we find no error on the part of the trial court. This assignment of error lacks merit.
The second assignment of error addresses the trial court’s determination that the Oasys imaging system was defective because it could not interface with the OMS system. The trial court heard extensive testimony on this point. The trial court ultimately determined that the system’s inability to interface with the OMS system constituted a redhibitory defect. We agree. Dr. Chastant specifically discussed with | fiGwaltney his need for a system that would interface with the OMS system he had in place. He was assured by Gwaltny that the Oasys system would meet all his needs and was specifically told the Oasys system would interface with OMS. It would not. The trial court heard expert testimony, which it accepted, that the Oasys system was defective and was not capable of performing the functions Gwaltney assured Chastant it would perform. La.Civ.Code art. 2545 specifically states that “a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.” As the manufacturer, Oasys is deemed to have known of the defects in the system. The trial court made findings of fact supported by the record and correctly applied applicable law. We find no error in the trial court’s ruling that the software was defective and the defect constituted a redhibitory defect.
In the third assignment of error, the appellant alternatively argues Dr. Chastant was only entitled to a reduction of the purchase price rather than recission of the sale as the evidence establishes only a partial failure of consideration, citing La.Civ.Code art. 2541 which provides, in part:
In an action for rescission because of a redhibitory defect the court may limit the remedy of the buyer to a reduction of the price.
(Emphasis added.)
The price reduction that may be granted under this article is the difference between the sale price and the price a reasonable buyer would have paid if he had known of the defect. Capitol City Leasing Corp. v. Hill, 404 So.2d 935 (La.1981). The trial court chose not to reduce the price, instead determining Dr. Chastant was entitled to a total recession of sale. Based on the record, we do not *1129 find this determination to be clearly wrong.
In their final assignment of error, Oasys argues the trial court erred in awarding attorney fees in this matter because Dr. Chastant faded to prove knowledge of the defect. This assignment of error lacks merit. Oasys is in fact the manufacturer of the software at issue and, as such, under the provisions of La.Civ.Code art. 2545, is deemed to know of the defects. We find no error in the trial court’s award of attorney fees.

CONCLUSION

We find no error on the part of the trial court in it’s determination that Dr. Chas-tant was entitled to rescission of the sale of the Oasys system because of redhibitory defects present in the system at the time of the sale. We find no error in the trial court’s grant of attorney’s fees. We affirm the judgment of the trial court in all respects.
AFFIRMED.