hTOBIAS, Judge.
This case involves the attempted sale of a C.P.N.C.[1] number that was issued by the City of New Orleans to permit its holder to operate a taxicab in and around the city. *722 The trial court held in favor of the plaintiff; both parties have appealed the judgment. After reviewing the record and applicable law, we reverse the trial court and enter judgment for the defendant.
On 30 May 1990, the defendant, Otis D. Brown (“Brown”), entered into a lease-purchase agreement with William A. Marks, Inc. (“Marks”) to obtain the rights to use a vehicle and C.P.N.C. No. 1520. The agreement provided that Brown would make a down payment of $6,500.00 towards the purchase of the taxicab and C.P.N.C. number and thereafter make weekly payments of $97.00 for the duration of the lease, which ended on 30 May 1992. It was agreed that at the conclusion of the lease, Brown would have an option to purchase the vehicle with the C.P.N.C. number for the remaining balance of $10,088.00.[2] The agreement required that Brown place as collateral for the lease both a C.P.N.C. number | ^personally owned by him and C.P.N.C. No. 1520. The agreement between Marks and Brown was extended numerous times, with the vehicle and C.P.N.C. No. 1520 eventually being bought in July 1999 by Malibu Cab Co., Inc., a company owned by Brown and two other people.
In October 1994, while Brown was leasing C.P.N.C. No. 1520 from Marks, the plaintiff, Sebron Magee, Sr. (“Magee”), approached Brown seeking assistance in obtaining a C.P.N.C. number. The parties entered into a written contract, entitled “Buyer Agreement,” which was prepared by Magee, and provided that Magee would pay Brown the sum of $135.00 per week for a term of 234 weeks, at which time, C.P.N.C. No. 1520 would become the property of Magee. The total purchase price for the C.P.N.C. number was $31,590.00.
After making approximately 216 of the 234 weekly payments, Brown canceled the contract in December 1998 because Magee had ceased making payments. Magee filed suit for specific performance or, in the alternative, a return of all monies paid by him to Brown.
A default judgment was entered against Brown on 20 September 2000, which decreed that Magee had good and final title to C.P.N.C. No. 1520, and ordered Brown to surrender the C.P.N.C. number to Ma-gee.
Brown filed a motion for new trial, which was granted by the trial court on 21 October 2000. The case was set for trial and tried by the trial court on 23 July 2002, which rendered judgment on 17 September 2002 in Magee’s favor in the amount of $24,570.00, plus interest from the date of demand, and all costs. In its reasons for judgment, the trial court stated:
|sThe plaintiff and defendant entered into a buyer’s agreement for the purchase of CPNC No. 1520. The CPNC in question did not belong to the defendant, rather it was registered in the name of William Marks, Inc. In essence, the defendant entered into an agreement which obligated the plaintiff to pay defendant’s obligation to Marks. The Court concludes that the plaintiff knew that the CPNC was not registered in defendant’s name. Unfortunately for the plaintiff, he ran into some medical and financial difficulties leaving him unable to honor his obligation to pay. Plaintiff is entitled to the return of the purchase price paid. He has proven payment of 182 checks in the amount of $24,570.00. This Court will not reduce this amount from any benefit the plaintiff may have received. To do so would reward the defendant for entering into *723 an agreement he knew full well he could not honor. The CPNC wasn’t registered in his name so he couldn’t transfer it to the plaintiff.
Brown argues that the trial court erred in returning the purchase price to Magee because Magee knew that Brown did not own the C.P.N.C. number. In the alternative, Brown argues that any return of the purchase price should be offset by the benefits Magee derived through use of the C.P.N.C. number for four years.
Magee has also appealed, arguing that because he attempted to pay the balance of what he owed under the contract, which Brown refused, he is the rightful owner of the C.P.N.C. number and should be awarded specific performance under the contract. In addition, Magee argues that he should be awarded the profits he would have made from the use of the C.P.N.C. number from December 1998 to the date of trial.
The proper standard of review for a Louisiana appellate court is whether the trial court is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). While the manifest error standard applies to our review of facts found below, we are required to examine the record as well for legal error. Where |4an error of law taints the record, we are not bound to affirm the judgment of the lower court. Id. at 844 n. 2.
A review of the testimony contained in the record reveals that Magee was aware that C.P.N.C. No. 1520 was registered to Marks. In fact, because of this fact, the Marks name was displayed on Magee’s taxicab that was using C.P.N.C. No. 1520. In addition, the record supports the finding that Magee did not honor his obligation to pay under the contract with Brown. Nothing in the contract, as drafted by Magee, prevented Brown from refusing to accept any further payments in the event of default and demanding return of C.P.N.C. No. 1520. The contract between them provided that should Magee become ill and unable to work, he would have a grace period of two weeks to validate the agreement. The evidence shows that Magee did not comply with this term of the contract.
The record also reveals that Magee derived substantial benefit from the use of C.P.N.C. No. 1520 while it was in his possession from October 1994 through December 1998. For example, in 1998, Magee made a profit of $25,400.00 by using the C.P.N.C. number. Although Magee did not complete his obligations under the contract and assume ownership of C.P.N.C. No. 1520, he had exclusive use of the license during the time in question.
Under Louisiana law, both the good faith and bad faith seller are entitled to a credit for the buyer’s use if the buyer reaped a benefit from that use. La. C. C arts. 2531 and 2545. There is no established rule for the calculation of credit for use. Chenniliaro v. Kaufman & Broad Home Systems of Louisiana, Inc., 93-1126, p. 11 (La.App. 1 Cir. 1/19/94), 636 So.2d 246, 253. However, in Capitol City Leasing Corp. v. Hill, 404 So.2d 935, 939 (La.1981), the Supreme Court held:
IsCompensation for the buyer’s use, however, ought not be granted automatically by the courts; even the value of an extensive use may be overridden by great inconveniences incurred because of the defective nature of the thing and constant interruptions in service caused by the seller’s attempts to repair.
Id. at 939, quoting Alexander v. Burroughs Corp., 359 So.2d 607, 610-11 (La.1978). Thus, a credit for a purchaser’s use of a thing may be proper in certain instances, even in favor of a bad faith seller. Alexander, supra. The grant of a credit for use is discretionary with the trial court. Guillory v. Jim Tatman’s Mobile Homes, Inc., 490 So.2d 1185 (La.App. 3 Cir.1986). *724 While it is true that La. C.C. art. 2531 provides that a seller shall receive a “credit for the value of any fruits or use which the purchaser has drawn” from the thing, the seller has the burden of proving the value of the buyer’s use of the thing. Holloway v. Gulf Motors, Inc., 588 So.2d 1322 (La.App. 2 Cir.1991).
In the instant case, we find that the trial court abused its discretion in failing to award Brown a credit for Magee’s use of C.P.N.C. No. 1520 for a period of four years. While Brown did not own the license at the time he entered into the contract with Magee, both parties were aware of the circumstances surrounding the transaction. In fact, Magee admitted that he had no other way to obtain ownership of a C.P.N.C. number without such an arrangement. The record indicates that both parties benefited from the contract; it would be inequitable to require Brown to refund the payments to Magee in light of the considerable benefit received by Ma-gee. The amounts paid by Magee to Brown are offset by the benefit received from the use of the thing. Accordingly, we reverse the judgment of the trial court and set aside the award in favor of Magee.
| (¡Likewise, we find Magee’s argument on appeal to be without merit. The record reflects that he did not honor the contract in its entirety; therefore, he is not entitled to specific performance as requested. Pursuant to La. C.C. art. 2056: “In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.”
Based on the above, we reverse the judgment of the trial court. Each party is to pay his own costs.

REVERSED AND RENDERED.

. A C.P.N.C., or Certificate of Public Necessity and Convenience, is a license required of all taxicabs and other for hire vehicles by the taxicab and for hire vehicles bureau of the City of New Orleans. (New Orleans City Code § 162-151.)

. The remaining balance changed every time the lease was extended.