811 So.2d 1206 (2002)
E. Doug and Deborah KENT, Plaintiffs-Appellees,
v.
Irma COBB and Twin City Exterminating Company, Inc., Defendants-Appellants.
No. 35,663-CA.
Court of Appeal of Louisiana, Second Circuit.
March 8, 2002.
*1209 Lunn, Irion, Salley, Carlisle, & Gardner, by James A. Majalis, Shreveport, for Defendant-Appellant Dominick Digilormo dba Twin City Exterminating.
Hargrove, Pesnell & Wyatt, by Scott C. Sinclair, Shreveport, for Defendant-Appellee Succession of Irma Ferguson Tillman Cobb.
Jones, Odom, Davis & Politz, L.L.P., by John S. Odom, Jr., Shreveport, for Plaintiffs-Appellees.
Before STEWART, GASKINS and PEATROSS, JJ.
GASKINS, Judge.
The trial court rendered judgment against the defendant, Dominick Digilormo d/b/a Twin City Exterminating Company, Inc. (Twin City), finding that the company, hired to do a termite inspection pursuant to the sale of the house, failed to reveal old termite damage. Twin City was found liable in solido with the seller of the house, Irma Ferguson Tillman Cobb. Mrs. Cobb was ordered to pay $50,000 in reduction of the purchase price of the sale. The trial court also ruled in favor of Mrs. Cobb, granting her recovery against Twin City for any amount of the judgment for which she is liable and awarding her credit of $4,500 for the buyers' use of the house. Twin City appealed the trial court judgment. Mrs. Cobb and the plaintiffs answered the appeal. We affirm the trial court judgment.

FACTS
In January 1998, the plaintiffs, E. Doug Kent and Deborah Kent, purchased a house at 4445 Finley in Shreveport from Mrs. Cobb for $83,000. The plaintiffs are both members of the military. Mr. Kent is in the Army and was stationed at Fort Polk. Mrs. Kent is in the Air Force and was stationed at Barksdale Air Force Base. Mrs. Cobb was an elderly lady who had lived in the house for many years. After the death of her husband, Mrs. Cobb remarried and moved to her new husband's house. She then sought to sell the Finley property.[1]
Twin City had previously treated the house for termites. In 1990, Twin City *1210 had given Mrs. Cobb a report reflecting that there was old termite damage in the north and west portions of the house. Pursuant to the sale, Mrs. Cobb hired Twin City to do a termite inspection and to render a Wood Destroying Insect Report (WDIR). Twin City's WDIR showed that on careful visual inspection of the readily accessible areas of the structure, there was no visible evidence of damage to the property and there was no present infestation or unreported damage due to termites or other wood destroying insects. This report was inaccurate. In fact, Twin City's technician did observe some old damage under the house, but chose not to disclose it on the WDIR.
Due to work requirements, the Kents did not move into the house until April 1998. They then began renovations, taking out a built-in bookcase and taking up a portion of the carpeting. The Kents additionally began repairs on a portion of the sheetrock that appeared rough. These actions revealed extensive old termite damage.
The Kents contacted the Louisiana Department of Agriculture and Forestry. A representative inspected the house and found moderate to extensive termite damage. There was damage to a window sill, some studs, in a front room, and under a front bedroom. The floor in one bathroom was damaged due to termites and water damage. Sheetrock was damaged as well as some of the hardwood flooring in the living room. Termite damage was found on a stud in the attic. Extensive damage was found in the den, including the wood paneling in the room. A wall next to the driveway could be moved by pressing on it, but it was not decisively shown that this was caused by termites. No live termites were found in the house.
After securing several estimates for repair of the damage, on August 4, 1998, the Kents filed suit for redhibition or reduction against Mrs. Cobb and for negligent misrepresentation against Twin City in connection with the termite inspection and the WDIR. Mrs. Cobb filed a third party demand against Twin City. After filing suit, the Kents voluntarily transferred to Italy. They left the house without completing repairs and ceased making mortgage payments. The mortgage company filed a petition of intervention, claiming that the mortgage loan was in default.[2]
A bench trial was held on July 20 and August 18, 2000. On October 17, 2000, the trial court gave oral reasons for judgment. The court found that the house had severe old termite damage that was not revealed to the buyers and that the buyers would not have purchased the property had they known of the damage. The court found that the defects were not readily apparent on a simple inspection of the house.
The court found that the inspection performed by Twin City was totally inadequate. The court noted that the technician for Twin City who performed the termite inspection testified that he did not crawl under the house to complete the inspection. The technician testified and Twin City concedes that some old damage was *1211 observed which the technician chose not to list on the WDIR. According to the court, if Twin City had properly conducted and reported its inspection of the house, then Mrs. Cobb would have no liability to the plaintiffs. The court found that Mrs. Cobb did not act in bad faith.
The court recounted testimony by a real estate agent that, although the purchase price of the house was $83,000, that the "fair rental amount for the property as-is would be two hundred fifty dollars per month."
The court concluded that the proper remedy was a reduction of the price. After outlining the estimates for repairing the damage, the court found that the price should be reduced by $50,000. The judgment was rendered in solido against Mrs. Cobb and Twin City, but as the seller of the house, Mrs. Cobb was given a reduction of $4,500 for the plaintiffs' use of the property for the 18 months they occupied the house. The trial court found that Twin City was not the vendor of the house, and therefore, was not entitled to an occupancy credit offset.
The court granted the succession's third party demand against Twin City, finding that Mrs. Cobb's liability is "passed through by virtue of the third party demand to Mr. Digilormo, the net effect of the judgment being judgment against Dominick Digilormo, doing business as Twin City Exterminating, in the amount of fifty thousand dollars." Judgment to that effect was signed by the trial court on March 20, 2001.
Twin City appealed the trial court judgment. The company argued that it should not be responsible for hidden termite damage, that the amount of reduction awarded was excessive, that the trial court erred in failing to reduce the award for the plaintiffs' failure to mitigate damages and that the trial court erred in granting Mrs. Cobb's third party demand against Twin City, ordering the company to pay all of any judgment that she might be called upon to pay in this matter.
The plaintiffs answered the appeal, arguing that the trial court erred in finding that Mrs. Cobb did not have actual knowledge of the prior damage and that she was not in bad faith in selling the house without disclosing that knowledge. The plaintiffs also argued that the trial court's award was inadequate. They claimed that the trial court should have awarded them the total cost of repairing the house, interest and attorney fees, the return of mortgage payments, closing costs, and maintenance expenses.
Mrs. Cobb's succession answered the appeal, seeking to dismiss the appellate arguments of the plaintiffs against Mrs. Cobb. The succession argued that only Twin City appealed the trial court judgment, therefore, the plaintiffs' answer to the appeal is not proper between the answering party and a non-appealing party. Additionally, the succession argued that the trial court awarded an excessive amount of damages to the plaintiffs. The succession also filed a motion to dismiss the plaintiffs' answer to the appeal as it related to Mrs. Cobb.
On October 18, 2001, this court granted the succession's motion to dismiss that part of the plaintiffs' answer to the appeal seeking to modify those portions of the trial court judgment affecting the succession.

LIABILITY OF TWIN CITY
Twin City contends that the trial court erred in finding it liable for old *1212 termite damage which was hidden and not ascertainable on a simple termite inspection. The company claims that the WDIR specifically excluded any hidden or inaccessible areas of damage and excluded areas not visible or accessible for inspection. Twin City urges that the trial court ignored the exclusions of the WDIR in its judgment. Although Twin City concedes that some old damage was not disclosed, it contends that, even if it had been, the house was structurally sound and there was no reason why a reasonably prudent buyer would not have purchased the house. The company urges that if it is liable at all, it is only for the small amount of old damage found in the crawl space of the house. It contends that it should not be held liable for the hidden damage present in walls, floors, and window sills. These arguments are without merit.
The plaintiffs' suit against Twin City is for negligent misrepresentation. They argue that Twin City's action in failing to properly complete the WDIR deprived them of the opportunity to decide not to purchase the house because of termite damage. In order to recover for negligent misrepresentation, a plaintiff must establish: (1) a legal duty on the part of the defendant to supply correct information; (2) a breach of this duty; and (3) that the breach caused damages to the plaintiff. Bellott v. Emery, 32,104 (La.App.2d Cir.9/22/99), 748 So.2d 16.
Negligent misrepresentation includes representations made in the course of rendering service pursuant to a contract, when made with an honest belief in its truth, but because of lack of reasonable care or an absence of skill or competence in ascertaining the facts or making the opinion, and/or the manner of communicating the facts or opinion, the representation causes economic loss to be suffered by a third party, who is an intended user of the information and who relies on the information to his detriment. It is distinguished from actions for intentional fraud, deceit, and warranty actions where the plaintiff has suffered physical harm. Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007 (La.1993).
Louisiana is a jurisdiction which allows recovery in tort for purely economic loss caused by negligent misrepresentation where privity of contract is absent. Where privity of contract is absent, but there is communication of the misinformation by the tort-feasor directly to the user or the user's agent, the user is owed a tort duty. Barrie v. V.P. Exterminators, Inc., supra. Twin City owed a duty to use reasonable care and competence in obtaining the information for the WDIR and communicating it to the plaintiffs, because they knew that the plaintiffs would be given the report and guided by it. See Barrie v. V.P. Exterminators, Inc., supra; Osborne v. Ladner, 96-0863 (La.App. 1st Cir.2/14/97), 691 So.2d 1245.
Brian L. Thornton, the technician with Twin City who filled out the WDIR, testified that he did annual termite inspections of the house beginning in 1993. He detailed his yearly inspection process, which included crawling under the house. He never found any live termites. Mr. Thornton stated that when he was called back to the house to do the inspection for the WDIR, he did not crawl under the house again, nor did he go into the attic. He did not do so because his yearly inspection was completed just a couple of weeks earlier. Mr. Thornton was aware of the old termite damage, but said that it was cosmetic only. He testified that 90-95% of the pier and *1213 beam houses in the area have some old termite damage.
Mr. Thornton admitted that he did not disclose the old termite damage on the WDIR. He stated that Mr. Digilormo of Twin City had given him the authority to make decisions on pier and beam houses. He stated that if he observed old damage that did not require repairs, he used his own judgment as to whether to give the house a passing WDIR. He stated that because so many houses have some old termite damage, always disclosing that fact caused a problem with Twin City's business and its dealings with realtors in the area. He testified that, in this case, because the damage he observed was cosmetic and not structural, he did not include it in the report. Mr. Thornton stated that he felt that the problem with the movement of the north wall in the den was due to a construction problem and not due to termite damage. During the course of one of his yearly inspections, he noted water damage under the hall bathroom and he mentioned that to Mrs. Cobb.
After the discovery of the old termite damage by the plaintiffs, the house was inspected by Wiley J. Robinson, an employee of the Louisiana Department of Agriculture and Forestry, the entity responsible for licensing pest control companies. Mr. Robinson outlined the proper procedure to follow in making a termite inspection and testified that old damage should have been noted on the WDIR. His inspection of the house revealed moderate to extensive old termite damage in half of the house. He also noted a problem with a water leak under the hall bathroom, and found the floor joist in this area to be weakened. He stated that the door to the crawl space under the house had old termite damage. He found that the damage extended to one of the studs in the attic. He said that when pushed, the north wall in the den moved one-half to one inch, but he did not know why it moved. However, he found evidence of old termite trails on the north wall under the tar paper. He found damage behind the bookcase in the den, in sheetrock in some rooms of the house, and in several slats in the hardwood floor in the living room. According to Mr. Robinson, damage to the flooring meant that the subfloor was also damaged. Additionally, damage was found around some of the door and window frames. Mr. Robinson testified that the inaccurate WDIR in this case would not have put a prospective buyer on notice of old termite damage.
Dean Cole inspected the house for structural soundness prior to the sale. He saw termite trails, but the floor joists were not eaten away. He noted that two floor joists under the house had been repaired. He did not offer an explanation for the movement in the north wall of the den. He found the house to be structurally sound.
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La. 1993). This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Even though an appellate court may feel *1214 its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State through Department of Transportation and Development, supra.
Under the facts presented in this case, we do not find that the trial court erred in finding that Twin City was liable for all the termite damage found in the plaintiffs' house. Twin City had a duty to the plaintiffs through its inspection of the house and issuance of a WDIR to provide accurate information to the plaintiffs regarding the presence of termite activity, either current or past, in the home. See Doskey v. Hebert, 93-1564 (La.App. 4th Cir.9/29/94), 645 So.2d 674. Termite inspections are designed to protect both the buyer and the seller. By requiring a professional inspection, the buyer satisfies his obligation to conduct a simple inspection, intending to avoid purchasing a home with active infestation and/or visible termite damage. At the same time, the seller's fears of being sued later for redhibition or reduction are alleviated. Since the inspection puts the buyer on notice of infestation and visible damage, he has no cause to complain about them in subsequent litigation. Amend v. McCabe, 95-0316 (La.12/1/95), 664 So.2d 1183.
It is undisputed that Twin City's employee failed to inform the plaintiffs of the old termite damage. By withholding this information, the plaintiffs were dissuaded from making further inspections of the house that would have revealed the extent of the damage. Based on the negligent misrepresentation by Twin City, the plaintiffs purchased the house, thinking that it was free of any termite damage. Instead, they purchased a house that was afflicted with moderate to extensive unrepaired termite damage. It was reasonable for the plaintiffs to attempt to remodel the house. However, due to the extensive unrepaired termite damage, more work and more expense were required to remodel than the plaintiffs reasonably expected. Under these circumstances, if the plaintiffs had been apprised of the true condition of the house, they would have been reasonable in choosing not to purchase it.
If Twin City had properly noted the visible termite damage, it would have fulfilled its duty to the plaintiffs and to Mrs. Cobb to supply correct information. The company then would not be liable for any hidden damage. However, by withholding this information from the plaintiffs, the company breached its duty. The breach of that duty damaged the plaintiffs. Twin City is liable for the damage sustained by the plaintiffs, which includes expenses for repairing all termite damage. See and compare Caple v. Green, 545 So.2d 1222 (La.App. 2d Cir.1989); Brouillette v. Ducote, 93-990 (La.App. 3d Cir.3/2/94), 634 So.2d 1243; Payne v. O'Quinn, 565 So.2d 1049 (La.App. 3d Cir.1990).

LIABILITY OF MRS. COBB
Twin City objects that the trial court judgment absolves Mrs. Cobb from any liability for the termite damage. The company claims that she acted to conceal the damage. According to Twin City, some of the old termite damage on the sheetrock was concealed by masking tape and paint. It also argues that its inspection could not have revealed the damage behind the bookcase and under the carpet. However, Twin City claims that Mrs. Cobb lived in the house for many years, was aware of these problems, and failed to *1215 inform the plaintiffs of the old termite damage. Therefore, the termite company urges that the trial court should not have granted her third party demand against Twin City, essentially requiring Twin City to bear the entire judgment. This argument is without merit.
The plaintiffs' action against Mrs. Cobb's succession is for redhibition or a reduction in the price of the house. A seller warrants the buyer against redhibitory defects or vices in the thing sold. A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed the buyer would not have bought the thing if he had known of the defect. The existence of such a defect gives the buyer the right to obtain rescission of the sale. A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of the buyer to a reduction of the price. La. C.C. art. 2520. The implied warranty against redhibitory defects covers only hidden defects, not defects that were known to the buyer at the time of the sale, or that should have been discovered by a reasonably prudent buyer. La. C.C. art. 2521.
To sustain a suit in redhibition, a purchaser must prove that: (1) the thing sold is absolutely useless for its intended purpose or its use so inconvenient that had he known of the defect, he would not have purchased it; (2) the defect existed at the time of the sale but was not apparent; (3) the seller was given an opportunity to repair the defect. Carroll v. Coleman, 27,861 (La.App.2d Cir.1/24/96), 666 So.2d 1264.
Generally, the amount of damages a plaintiff can recover because of a redhibitory defect depends upon the type of seller involved. Under La. C.C. art. 2531, a good faith seller, namely one who knew not of the vices of the thing he sold, is required to repair, remedy or correct the vices or defects in the property that he sold. If he is unable to do so, he must restore the purchase price with interest and reimburse the reasonable expenses occasioned by the sale and those expenses incurred for the preservation of the property. McNeely v. Ford Motor Company, Inc., 98-2139 (La.App. 1st Cir.12/28/99), 763 So.2d 659, writ denied, XXXX-XXXX (La.4/28/00), 760 So.2d 1182. The seller who knows the vice of the thing he sells and omits to declare it is answerable to the buyer in damages. In addition to restitution for the purchase price and repayment of expenses, including reasonable attorney fees, the bad faith seller is answerable for other damages. La. C.C. art. 2545. Under certain circumstances those damages can include nonpecuniary damages for mental anguish, aggravation and inconvenience. McNeely v. Ford Motor Company, Inc., supra.
Twin City points out that a Property Condition Disclosure Form was executed by Mrs. Cobb in connection with this sale. This form asks general questions about whether the roof has ever leaked, whether the property has ever flooded and whether there has been any termite damage. Mrs. Cobb signed as an absentee owner and stated that she had no knowledge of the present condition of the house. Twin City argues that she did this to avoid answering the questions about the condition of the house. According to Twin City, Mrs. Cobb was evasive in her statement on the disclosure form and avoided answering questions about whether the house had *1216 ever had termites. In fact, Mrs. Cobb was given a graph by Twin City after the 1990 termite treatment showing the areas of the house that had been damaged.
Twin City also points out that some areas of termite damage on the sheetrock were covered with masking tape and paint. Twin City contends that Mrs. Cobb was aware of these repairs and failed to disclose them to the plaintiffs. Therefore, the trial court should not have allowed her to recover the entire amount of any judgment against her from Twin City.
Mrs. Cobb's succession argues that the trial court correctly found that she was entitled to indemnity against Twin City. It points out that she was not completely absolved of liability in this matter, but is liable in solido with Twin City. It claims that any failure on her part to disclose or conceal prior termite damage concerns her and the Kents and not Twin City. The succession argues that if Twin City had fulfilled its obligation to make a proper inspection of the house, Mrs. Cobb would not have any liability to the plaintiffs. Twin City breached its obligation to her and therefore, the trial court correctly granted her indemnity against the company.
Candace Tillman Ray, Mrs. Cobb's daughter, testified that her father purchased the house in 1949 and her parents were married in 1953. In the late 1980's, her parents discovered a termite problem and had the house treated by a company other than Twin City. After this termite treatment, a contractor repaired the termite damage. In 1990, Twin City treated the house again and a graph was given to Mrs. Cobb, outlining the areas of the house that had termite damage. Twin City told Mrs. Ray's parents that the damage did not require repairs. Twin City entered into a contract with Mrs. Ray's parents to perform yearly termite inspections. The decision to contract with Twin City was fueled by an understanding that the company would stand behind its work and would be responsible if any more termite damage occurred.
Mrs. Ray's father died in 1993 and her mother remarried in 1996. In 1997, after living in her new husband's house for about one year, Mrs. Cobb decided to sell the house on Finley. Within a couple of years prior to selling the house, Mrs. Cobb put in new carpet. According to Mrs. Ray, when the carpet was put in, the installers did not mention any termite damage to the hardwood floors. Also, Mrs. Ray testified that when the house was sold, the paint inside was not flaky. Although she stated that her mother would sometimes spackle and paint areas in the house, she denied knowledge that masking tape was ever used on the walls. Basically, Mrs. Ray testified that, while aware of a prior termite infestation, her mother thought that all necessary action concerning the old damage had been taken. The record fails to show that Mrs. Cobb purposely withheld knowledge of the termite damage.
As stated above, termite damage is a redhibitory vice. As the seller of the house, Mrs. Cobb is liable for either rescission or reduction in the purchase price. In this case, the trial court found that a reduction in the price was appropriate and granted the plaintiffs judgment against Mrs. Cobb. As found by the trial court, Twin City breached its duty to Mrs. Cobb in failing to disclose the old termite damage on the WDIR. Proper disclosure by Twin City would have insulated Mrs. Cobb from this suit.
The trial court then made a credibility determination regarding whether Mrs. *1217 Cobb concealed the old termite damage from the plaintiffs. The trial court had evidence upon which it could determine that Mrs. Cobb was in good faith and did not actively undertake to conceal old termite damage. Mrs. Ray's testimony shows that her parents took measures to eradicate the termite infestation and thought that all necessary repairs to the old damage had been made. Further, Mrs. Cobb did not live in the house for one year prior to the sale. Therefore, under the facts presented here, the trial court had a basis in the record for its finding that Mrs. Cobb did not make a false statement on her property disclosure statement when she indicated that she was an absentee owner and did not know the present condition of the house. According to the trial court, there is no showing that Mrs. Cobb knew of the extensive termite damage behind the bookcase or on the wood flooring. Further, she believed that necessary repairs had been made to the old damage. She reasonably relied upon Twin City to disclose the presence of termites and to inform her and the prospective buyers of the property of any old damage. Such information would have alerted the buyers to the need for further inspection. Twin City breached its contract with Mrs. Cobb. Specifically limited to the particular facts of this case, we find that the trial court did not err in granting Mrs. Cobb's third party demand against Twin City.

AMOUNT OF REDUCTION IN PURCHASE PRICE AND DAMAGES
Twin City argues that the $50,000 reduction in the purchase price for a house of more than 2,000 square feet is excessive. It contends that the house is structurally sound and that cosmetic damage was revealed only when the plaintiffs began making changes to the house. Twin City objects that, in arriving at the amount to be awarded in this case, the trial court did not make any findings as to the work that actually needed to be done to repair the termite damage.
Twin City argues that the cost of repairs is only $12,000 and not $50,000 as found by the trial court. The company claims that it is responsible only for a portion of this amount attributable to the discoverable damage under the house. It urges that, at most it should be held liable only for $600 to $1,200. Twin City points out that the termite damage was limited to the north and west walls of the house and that the damage to the floor of a bathroom was caused, not by termites, but by a water leak.
The plaintiffs answered the appeal, contending that the trial court award was inadequate. They argue that they are entitled to recover all of their purely economic damage from Twin City. This includes the cost of repairs to the house and expenses incurred in the purchase of a house they would not have bought if Twin City accurately reported the unrepaired termite damage. The plaintiffs claim that the cost of repairs is between $74,000 and $92,000. They contend that they spent $7,808.18 on various repairs to the residence. They also claim recovery for $11,228.31 in mortgage payments which they would not have made if they had not purchased the house. They urge that, considering all these factors, a proper award would be $106,621.02.
There is no formula which can be applied with exactitude in the assessment of property damages. Each case must rest on its own facts and circumstances as supported by the proof in the record. Where there is a legal right to recovery of *1218 damages but the amount cannot be exactly determined, the courts have reasonable discretion to assess them based upon all the facts and circumstances of the particular case. Tudor Chateau Creole Apartments Partnership v. D.A. Exterminating Co., Inc., 96-0951 (La.App. 1st Cir.2/14/97), 691 So.2d 1259.
In a redhibitory suit, the trial court has the discretion to order a reduction of the price instead of rescission of the sale where the defect in the thing sold is such to merely diminish the value. La. C.C. art. 2541; Pardue v. Ryan Chevrolet, Inc., 31,052 (La.App.2d Cir.9/28/98), 719 So.2d 623, writ denied, 98-2714 (La.12/18/98), 734 So.2d 639. The purchaser has the burden of proving the amount of reduction in purchase price with reasonable certainty. The trial judge is afforded much discretion in determining the amount of the reduction. The general rule for the measurement of damages in quanti minoris actions is the determination of the difference between the value of the defective thing at the time of the sale and the value as warranted by the seller. When real estate is involved, the allowable diminution should be the amount necessary to convert the unsound structure into a sound one. Dodd v. Tucker, 528 So.2d 644 (La.App. 2 Cir. 1988).
The existence of a redhibitory defect and the amount to be awarded are questions of fact, and the trial court's conclusions about them should not be set aside absent manifest error. Sanders v. Earnest, 34,656 (La.App.2d Cir.7/24/01), 793 So.2d 393; Pardue v. Ryan Chevrolet Inc., supra. Termite infestation and damage constitute a redhibitory defect. David v. Meek, 97-0523 (La.App. 1st Cir.4/8/98), 710 So.2d 1160.
The proper measure of damages in an action for reduction is the difference between the actual sales price and the price a reasonable buyer and seller would have agreed upon, if they had known of the defect. Osborne v. Ladner, supra. The cost of repairing a redhibitory defect is a principal consideration in determining the extent to which the purchase price should be reduced based on such defects. The burden of establishing the amount of any reduction in the purchase price to which the buyer is entitled is upon the buyer. The trier of fact has much discretion to assess the amount of recovery in reduction cases, and its award will not be modified in the absence of clear abuse of that discretion. Osborne v. Ladner, supra.
To establish the amount necessary to repair the old termite damage, the plaintiffs presented the expert testimony of Stephen R. Williams, a carpenter and the Kents' neighbor on Finley. According to Mr. Williams, he examined the house at the plaintiffs' request. He saw termite damage in one bedroom as well as extensive damage under the house. He testified that several floor joists in the bathroom were damaged. He noticed a six-foot "scab" on a floor joist under the bathroom that had been installed to hold up the sagging floor. He stated that the tile floor and the cast-iron drain pipe were all that was holding the toilet up and he advised the Kents not to let adults use that bathroom. Mr. Williams found that the floor joists under the living room and the hardwood flooring in that room were damaged. He noted extensive damage behind the bookcase in the den and removed the trim around a window which also revealed old termite damage. Mr. Williams testified that the north wall of the den had stability problems and moved when it was pushed upon.
*1219 In order to repair the damage to the house, Mr. Williams stated that all the paneling in the den needed to be removed. He proposed to brace the roof, cut all the walls loose and rebuild the house from the piers up. He noted that den addition was not constructed properly. He stated that the studs on the north wall were two feet longer than those in the rest of the house. His estimate included rectifying that problem. He said that half of the joists in the living room needed to be replaced. He stated that the sheetrock in the front two rooms and the paneling in the den would have to be replaced. He noted several areas where the sheetrock in the house was repaired with masking tape and then painted over. He said that the hall bathroom basically would need to be rebuilt. He opined that the rafters and the ceiling joists in the attic were sound even though there was some evidence of damage. He proposed extensive renovations to the den, the kitchen and breakfast room, the dining room, the living room, the bedroom and bathroom. He also said that the electrical wiring in the house would have to be updated to conform to current code requirements. He concluded that repairs would cost $92,084.53.
On cross-examination, Mr. Williams stated that he had based his estimate on replacing all the studs in the house. When further questioned as to how he arrived at his estimate, he stated that the damage might be repaired for $40,000.00 to $50,000.00.
Although not discussed at trial, the plaintiffs also filed into evidence an estimate from City Remodeling for $75,279.64 to rebuild the house.
Kenneth Thomas testified as an expert in estimating, contracting, and carpentry. In evaluating the house, he crawled under it and looked in the attic. He noted old termite damage. He first estimated that repairing the house would cost $41,625. This would include basically rebuilding the front of the house. He would replace the sheetrock and all wood that needed to be replaced. He would also replace all the wall studs, whether they were damaged by termites or not. He stated that there was no structural damage to the underside of the house. Regarding the north wall in the den, Mr. Thomas noted that it moved approximately 3/8 of an inch, when pressed upon. He did not note any evidence of structural damage in the wall. He said that the studs on that wall were longer than in the rest of the house and there was a sliding glass window which would weaken the wall. These factors possibly contributed to the movement of the wall.
Mr. Thomas noted that, to a large extent, it was not possible to determine what repairs would actually be necessary until the work was commenced. According to Mr. Thomas, most of the damage to the house was superficial. He testified, that, more probably than not, the entire front of the house will not have to be replaced. He then did a second estimate based on what repairs he thought had to be done to the house, more probably than not. According to Mr. Thomas's second estimate, the house could be repaired for $12,820.00. On further questioning, he stated that his estimate was based upon replacing the carpeting in the house, and did not include repair of the hardwood floors.
The record shows that the house has extensive unrepaired termite damage. The court considered all the estimates for repairs made by the experts. The court found that the estimate given by Mr. Williams was too high and that given by Mr. Thomas was too low. In determining *1220 that the purchase price should be reduced by $50,000, the trial court concluded that this was a reasonable amount to make the necessary repairs. As stated above, the amount to be allowed in a reduction case is based on the actual price and the price a reasonable seller would have agreed upon. The cost of the repair is a primary consideration in determining the extent of the reduction. Based upon the evidence presented, we cannot say that the trial court was manifestly erroneous or clearly wrong in the amount awarded. The court, in its discretion, allowed a reasonable amount to make the repairs to the house.[3]
Further, we find that the trial court was within its discretion in rejecting the plaintiffs' claim for additional expenses incurred during the occupancy of the house, including unrelated repairs and mortgage payments. The award made by the trial court is based upon sound reasoning. We find that the award is not excessive and is sufficient to compensate the plaintiffs in this case.

FAILURE TO MITIGATE DAMAGES
Twin City claims that the trial court erred in failing to reduce the plaintiffs' recovery against the company despite its finding that the plaintiffs failed to mitigate their damages. While the trial court gave Mrs. Cobb a credit for $250 per month for the 18 months the Kents lived in the house, it did so viewing it as a credit allowable only to a seller in a redhibition case. Twin City contends that the court specifically found that the plaintiff failed to mitigate their damages, therefore the credit should also benefit the company. It contends that the house was in good aesthetic condition at the time of the sale, but the plaintiffs undertook renovations, which they failed to complete and they failed to restore the house to the condition it was in when they bought it. Also, when the plaintiffs voluntarily transferred to Italy, they did not rent the house, but simply ceased making the mortgage payments. Twin City contends that the trial court misconstrued testimony as to the rental value of the house in its present condition.
The doctrine of mitigation of damages imposes upon the injured party a duty to exercise reasonable diligence and ordinary care in attempting to minimize his damage after the injury has been inflicted. The care and diligence required of him is the same as that which would be required by a man of ordinary prudence under like circumstances. The burden rests with the wrongdoer to show that the victim of tortious conduct failed to mitigate damages. Orthopaedic Clinic of Monroe v. Ruhl, 34,700 (La.App.2d Cir.5/11/01), 786 So.2d 323, writ denied, XXXX-XXXX (La.10/5/01), 798 So.2d 970. An injured party has a duty to mitigate only if it is reasonable to do so. Gaston v. Bobby Johnson Equipment Company, Inc., 34,028 (La.App.2d Cir.11/3/00), 771 So.2d 848.
Susan Slator, a real estate agent, was accepted as an expert in single family residence rental rates. She testified that, considering the size and location of the house at issue here, if it was in good condition, it would rent for $750 to $800 per month. In the current condition of the house, it could not be rented for fair market rental value. The house had badly soiled carpet *1221 throughout. Necessary repairs included refinishing the hardwood floors, installing quarter-round on the baseboards, repairing holes in the sheetrock, replacing window trim, and painting. According to Ms. Slator, the deficiencies in the property would reduce the rental value by $200 to $250 per month. She stated that the house might rent for $500 per month or less. She stated that she would not show the house in its present condition.
While Ms. Slator testified that the current condition of the house would reduce its rental value by $200 to $250 per month, the trial court misconstrued her statement to say that the house would only rent for that amount. Accordingly, the trial court allowed Mrs. Cobb's succession to recover only $250 per month for the 18 months that the Kents lived in the house, for a total of $4,500. This award was based upon the theory that as the seller of the property, Mrs. Cobb was entitled to have the judgment against her for reduction of the purchase price reduced by the use that the buyers actually derived from the property. Mrs. Cobb's succession has not complained regarding the amount allowed by the trial court for use of the property. In redhibition actions, both the good faith and bad faith seller are entitled to a credit for the buyer's use if the buyer reaped a benefit from that use. La. C.C. arts. 2531 and 2545; Capitol City Leasing Corporation v. Hill, 404 So.2d 935 (La.1981); Fruge v. Toyota Motor Sales, U.S. A., Inc., 96-1065 (La.App. 3d Cir.2/26/97), 692 So.2d 467.
We note that in the oral reasons for judgment the trial court stated that Mrs. Cobb's succession was being given a credit, in part based on the Kents' failure to mitigate damages. A later ruling of the trial court correctly stated that the credit was given under the theory of reduction, because Mrs. Cobb was the seller of the property and the Kents derived some benefit from living in the property for 18 months. The credit was not based on mitigation of damages.
The action against Twin City is based in tort. Because the company is not the seller of the property, Twin City is not entitled to an offset for the plaintiffs' use of the property. The award against Twin City may be reduced only if it shows that the Kents failed to mitigate their damages. The theory of mitigation of damages is based upon reducing the damages that are incurred after an injury is sustained. Twin City has not carried its burden of showing that the Kents failed to take necessary steps to mitigate their damages. The Kents began renovations on the house and then ceased upon discovery of the termite damage. This action by the plaintiffs was reasonable. The Kents' actions merely exposed the extent of the termite damage. Twin City has failed to show that the plaintiffs' acts or failure to act caused further damage. There is no showing that the plaintiffs could have acted in any way to reduce the amount necessary to repair the termite damage. Although the house is apparently vacant and the plaintiffs did not attempt to rent the house after they moved out, the judgment in their favor does not include any damages for nonuse of the house. Further, Twin City has failed to demonstrate that the plaintiffs' failure to repair and rent the house has caused further damage. Accordingly, the trial court did not err in rejecting Twin City's argument that the plaintiffs failed to mitigate their damages.

CONCLUSION
For the reasons stated above, we affirm in all respects the trial court judgment in *1222 favor of the plaintiffs, E. Doug Kent and Deborah Kent, against Dominick Digilormo, d/b/a Twin City Exterminating Company, Inc., and against the succession of Irma Ferguson Tillman Cobb in solido in the amount of $50,000 plus interest from the date of judicial demand until paid. We also affirm the trial court judgment granting the succession of Irma Ferguson Tillman Cobb a reduction of $4,500 for the plaintiffs' use of the property. Further, we affirm the trial court judgment granting the third party demand for indemnification by the succession of Irma Ferguson Tillman Ferguson against Dominick Digilormo d/b/a Twin City Exterminating Company, Inc. Costs in this court are assessed to Dominick Digilormo d/b/a Twin City Exterminating Company, Inc.
AFFIRMED.
NOTES
[1] Mrs. Cobb died on March 8, 2000, and her succession was substituted as a defendant in this case.
[2] A joint stipulation was entered concerning the existence of the mortgage and the principal balance. Although the mortgage company filed an intervention in the present case, counsel for Mrs. Cobb's succession noted that the mortgage company had also filed a separate suit against the Kents to enforce and protect its rights under the mortgage. The issues regarding the mortgage are not before this court on appeal.
[3] We also reject Twin City's claim that the trial court award was based upon misconstrued testimony as to the present rental value of the property. While this argument will be discussed below, we find that the trial court award was based upon the amount necessary to repair the house.