981 So.2d 235 (2008)
Laureen MAYFIELD, Plaintiff-Appellee
v.
Joseph N. REED, Glenda O. Reed, Defendants-Appellants
Anita Gray and Michael Cripps, d/b/a Cripps Foundation Service, Defendants-Appellees.
No. 43,226-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 2008.
Rehearing Denied May 29, 2008.
*236 Robert E. Shadoin, Ruston, for Defendants/Appellants, Joseph and Glenda Reed.
Abrams & Lafargue, LLC, by Reginald Wayne Abrams, Shreveport, for Defendant/Appellee, Anita Gray.
*237 Belton, Houck & Associates, by John F.K. Belton, Ruston, for Defendant/Appellee, Michael Cripps d/b/a Cripps Foundation.
Onebane Law Firm by Frank H. Spruiell, Jr., Shreveport, for Plaintiff/Appellee, Laureen Mayfield.
Before GASKINS, MOORE and LOLLEY, JJ.
LOLLEY, J.
In this redhibition case, defendants, Joseph and Glenda Reed, appeal a judgment by the Third Judicial District Court, Parish of Lincoln, State of Louisiana, which found in favor of plaintiff, Laureen Mayfield and awarded damages. Mayfield also appeals the judgment seeking rescission of the sale and an increase in attorney's fees. For the following reasons we affirm in part and amend in part.

FACTS
On June 30, 2004, plaintiff, Laureen Mayfield, purchased from Joseph and Glenda Reed a home in Simsboro, Louisiana for the price of $166,000.00. The residence, built in 1997, is a split-level home built into a sloping hillside with a pond close by. The home was constructed by the Reeds without the use of a general contractor. The lower level of the house, as originally constructed, was left open. The Reeds later paved the area under the house to create a patio and parking area. Soon after the area was paved, the Reeds partially enclosed it to create a laundry room, utility room, and a guest bedroom. According to the Reeds, the first and only time flooding became an issue was after nine inches of rain had fallen. The Reeds installed two sump pumps at both ends of the downstairs area. According to the Reeds, this solved the problem.
In the days leading up to Mayfield's purchase of the house, Sue Franklin, a remodeling contractor, came and looked at the house for potential work Mayfield wanted to do on the home. While there, Franklin noticed fresh water in the enclosed area and called Mayfield immediately. Michael Cripps who had been retained earlier to evaluate the foundation was asked to come back and evaluate the problem. Cripps suggested that putting in French drains would take care of the water seepage and would cost around $3,000.00. The Reeds agreed to lower their asking price to accommodate this repair.
After the sale, Joe Reed came up to the house and openly discussed the issue of water seepage. Joe Reed opined that the French drains were not going to help because there was a defect in the way the slab was poured which caused windblown rainwater to flow toward the house and not away. Mayfield continued to have issues of water intrusion in the enclosed lower level area even after the French drains were placed. Mayfield brought suit against the Reeds, Anita Gray, the dual agent, and Michael Cripps d/b/a Cripps Foundation Service. Mayfield claims that she was not made aware of the existence of this redhibitory defect prior to the sale and had she known about this issue she would not have purchased the house. On July 24, 2006, after a six-day trial, a jury found that a redhibitory defect existed and the Reeds were guilty of fraud for failing to disclose the defect. Mayfield was awarded $89,400.00 in damages with interest.[1] On March 7, 2007, in a subsequent judgment on a Rule to Fix Attorney Fees, the court awarded Mayfield $36,975.00 *238 with interest from February 22, 2007. This appeal ensued.

LAW AND DISCUSSION
On appeal, the Reeds argue that the jury erred in its findings because Mayfield had actual knowledge of the water seepage problems prior to the sale. Furthermore, the Reeds contend that Mayfield had full access to the house and that there was plenty of time for discovery, inspection, and investigation. They ask this court to reverse the finding of fraud and the associated damages. In the alternative, they contend that the actual price to repair the problem is less than what was awarded and ask that the amount be reduced accordingly. The Reeds also argue that the trial court erred in denying their motion for new trial as a result of ineffective assistance of counsel at the trial level. At the outset, we note that the record does not support this claim and therefore we find this argument is without merit. Mayfield, on the other hand, argues that the jury should have awarded the remedy of rescission of the sale since there was a finding of fraud, but in the alternative asks that the amount of damages be affirmed. Mayfield also seeks an increase in attorney's fees.
The appellate standard of review applies equally in jury trials and judge trials and has been stated as follows:
Factual determinations of the trier of fact may not be reversed absent manifest error or unless they are clearly wrong. In order to reverse a trial court's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. The appellate court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided the case differently.
Green v. K-Mart Corp., 2003-2495 (La.05/25/04), 874 So.2d 838, 842. (Internal citations omitted).

Redhibition and Fraud
Louisiana Civil Code Article 2520 provides that:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
A defect is not hidden, and therefore not redhibitory, when the buyer knows of it either because it was disclosed by the seller or because the buyer discovered it himself. La. C.C. art. 2521, Official Revision Comment (b). The standard of diligence that must be exercised by the buyer in determining whether the thing purchased is defective is that of a prudent administrator. La. C.C. art. 2521, Official Revision Comment (c). The buyer must make more than a casual observation of the object; he must examine the thing to ascertain its soundness. La. C.C. art. 2521, Official Revision Comment (d).
Besides alleging that the defect was redhibitory, Mayfield argues that the Reeds *239 committed fraud by withholding the truth about the water intrusion and the defect in the slab. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C.C. art. 1953.
Here, the defect, simply, was the way the slab was initially poured. The lack of slope caused windblown rainwater to flow toward the house instead of away from the house. The Reeds argue that the defect was not, however, redhibitory because it was fit for its original intended use. The Reeds were still able to use the house and addressed the water problems with the "mere sweep of the broom." We disagree. While he may not have deemed the water intrusion a "flood," Joseph Reed testified that water got into the utility room thirty to forty times, and into the laundry room approximately ten times. Clearly, the water seepage prevented Mayfield's daughter from using the enclosed area as her bedroom. However, even if Mayfield was not able to utilize that area, we must further determine if she knew or should have known with inspection, about the defect prior to the sale. After a thorough review of the record, we find Mayfield did not know the extent of the defect.
The record indicates that there was conflicting testimony between the Reeds and Gray at trial. The Reeds were adamant that they told Gray on several occasions that there was a water intrusion resulting from the windblown rain and that they dealt with it by sweeping the water off the patio before it reached the enclosed area. In addition, Joseph Reed testified that he told Gray that he thought that the French drains were not going to work. The Reeds testified that they believed Gray had told Mayfield. Yet, Gray testified that at no time was the source or the severity of the water seepage ever addressed. She did recall that the Reeds explained that the bamboo shades that were put up helped prevent the windblown rain from coming onto the patio, but she did not recall that the rain caused water seepage into the enclosed area.
Notably, the record reveals that the Reeds were given several opportunities to relay that the defective slab caused the blowing rain from a rainstorm to puddle and eventually flow toward the enclosed structure. One instance is when Mayfield and the dual realtor, Anita Gray, were doing a walk-through and noticed a water mark on the wall in the laundry room. Gray called the Reeds for an explanation at which time the Reeds disclosed that there was a one-time flood event caused by a nine-inch rain and that sump pumps were installed solving the problem. The property disclosure form was amended to reflect this. However, according to Gray, at no point during that conversation did the issue of blowing rain come up.
The record also reflects that Mayfield hired several people to evaluate the house. Quincy Doles, a licensed home inspector, noted the evidence of water intrusion in the laundry room. However, Mayfield testified that she relied on the one-time flood explanation the Reeds had given to explain away the water marks Doles noticed. Cripps also relayed to Mayfield that the sump pumps fixed future flooding issues. Furthermore, Franklin noticed fresh water in the enclosed area and called Mayfield immediately. Michael Cripps again evaluated the problem and advised that putting in French drains would take care of the water seepage issue. The jury considered the content of the evaluations and clearly rejected the idea that Mayfield's further investigation put her on notice *240 regarding the water intrusion. For purposes of seller's warranty, "simple inspection" that would have disclosed apparent defects involves more than mere casual observation; it requires the buyer who observes defects to conduct further investigation as would be conducted by a reasonably prudent buyer acting under similar circumstances. McGough v. Oakwood Mobile Homes, Inc., 34,091 (La.App.2d Cir.11/01/00), 779 So.2d 793. Clearly, Mayfield saw an apparent defect and conducted further investigation by hiring "experts"; therefore, the Reeds' argument that Mayfield would have known about the defect with further investigation is without merit.
The Reeds also point to the testimony of Ryan Madden, the closing attorney. Madden testified that he recalled the issue of water intrusion being discussed prior to the papers being signed the day of the closing. However, no one else participating in the closing remembered the specific discussion of water intrusion. Again, the jury made a credibility call.
The record does raise the question why would Joseph Reed come to the house and openly reveal the defect to Mayfield if he was withholding the truth, not to mention the Reeds' cooperation to allow the various people hired by Mayfield to come in and out of the house at their own convenience. Regardless of these observations, this court cannot substitute its judgment for the trial court when its conclusions are reasonable. Hill v. Hutto, 33,583 (La.App. 2 Cir. 06/21/00), 764 So.2d 1169, writ denied, 2002-2192 (La.10/13/00), 771 So.2d 651. The record reveals that even the experts who examined the house were unable to discover what the Reeds knew regarding the issues with water intrusion resulting from the blowing rain. As noted above, fraud may result from silence. On this appeal, we cannot find that the jury erred in its conclusions that the defect was redhibitory and that the Reeds committed fraud when they had knowledge of the defects and failed to disclose them prior to the sale.

Damages
While rescission was an option, the jury declined to set aside the sale and, instead, awarded damages in the amount of $89,400.00. Whereas on appeal Mayfield argues that the jury erred and seeks rescission, it is within the jury's discretion to award a reduction in purchase price rather than to order the sale rescinded. La. C.C. art. 2541; Sanders v. Earnest, 34,656 (La.App. 2 Cir. 07/24/01), 793 So.2d 393. The trier of fact has much discretion to assess the amount of recovery in reduction cases, and its award will not be modified in the absence of clear abuse of that discretion. Kent v. Cobb, 35,663 (La. App.2d Cir.03/08/02), 811 So.2d 1206, writ denied, XXXX-XXXX (La.06/07/02), 818 So.2d 772. The jury heard expert testimony from several witnesses in addition to various options to fix the defect, e.g., putting a lip around the enclosed area, floor drains, removing and replacing the entire slab. Consequently, estimates ranged from $15,500.00 to $104,737.50. The jury awarded $89,400.00, an amount that was within the range given by the expert testimony. This amount reflects what the jury deemed necessary to remedy the water intrusion problem making the space livable. The cost of repairing a redhibitory defect is a principal consideration in determining the extent to which the purchase price should be reduced based on such defect. Kent v. Cobb, supra. We note that the Reeds did not offer any testimony for an alternative less expensive way to resolve the issue. After reviewing the record we cannot find that the jury's award was an abuse of discretion.

*241 Attorney's Fees and Interest

Mayfield also seeks an increase in the award for attorney's fees and argues that the trial court erred when it imposed its own rate and did not award the actual rate her attorney charged for this case. Here, there is no dispute that Mayfield is entitled to recover attorney's fees. A successful plaintiff in an action for redhibition may recover reasonable attorney's fee incurred in bringing the action if the seller knew or should have known of the defect in the object or thing that was subject of the sale. La. C.C. art. 2545; See Linoski v. Fleetwood Homes of Texas #12, 38,338 (La.App.2d Cir.05/12/04), 873 So.2d 886. Reasonableness of attorney's fees is determined by the factors set forth in Rule 1.5(a) of the Rules of Professional Conduct, which include: (1) the time and labor required, the novelty or difficulty of the issues, and the skill required to properly perform the legal services; (2) the likelihood, if apparent to the client, that the matter will preclude other employment; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and results obtained; (5) the time limitations imposed by the client or circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer; and, (8) whether the fee is fixed or contingent.
At the hearing to fix attorney's fees, Joseph Bleich was offered as an expert and he opined that Mayfield's attorney's fees at the rate of $180 per hour, totaling $42,489.00, was fair and reasonable. The trial court, however, calculated the fee based on the rate of $150.00 per hour, totaling $36,975.00.
Here, the record supports the substantial time and labor expended by Mayfield's counsel. In addition, there was meticulous accounting of the various costs associated with Mayfield's representation, including depositions, prepared interrogatories, various conferences, filed motions, trial preparations, and court appearances. Furthermore, there was expert testimony indicating that the fees were reasonable and nothing was presented to contradict that testimony. Accordingly, we find that the trial court erred in awarding only partial fees, and amend the attorney's fees to award a total amount of $42,489.00. In addition, we award $2,500.00 for fees associated with this appeal.
Finally, Mayfield asks this court to change the date on which interest started to accrue to the date of judgment. The trial court erred in awarding interest as of the date of the hearing to fix attorney's fees. We hereby amend the date from which interest starts to accrue to the date of judgment, July 24, 2006.

CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment as it pertains to Joseph and Glenda Reed. We amend the judgment to increase the amount of attorney's fees awarded to Laureen Mayfield, and the date on which its interest accrued. Costs of this appeal are assessed against the Reeds.
AMENDED, AND AS AMENDED, AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, C.J., and STEWART, GASKINS, MOORE and LOLLEY, JJ.
Rehearing denied.
BROWN, J., would grant rehearing.
NOTES
[1] The judgment also found in favor of Anita Gray and Michael Cripps and claims against them were dismissed accordingly. This part of the judgment in not on appeal.